## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00581-TFH** |
| **v.** | : | |
| | : | |
| **JACOB KYLE WIEDRICH,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jacob Wiedrich ("Wiedrich") to three-months incarceration, three years' probation, and $500 restitution.

**I.      A Sentence Imposed for a Violation of 40 U.S.C. § 5104(e)(2)(G) May Include Both Incarceration and Probation**

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). Section 3561(a)(3) thus states the general rule that "imposition of both probation and straight imprisonment" in the same sentencing hearing is not permitted. *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015); *United States v. Anderson,* 787 F. Supp. 537, 539 (D. Md. 1992).

This general prohibition against sentences that combine continuous incarceration and probation does not apply, however, where the defendant is sentenced for a petty offense. *See* 18 U.S.C. § 3561(a)(3); *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009). In *Posley*,

1

the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison. *Posley*, 351 F. App'x at 808. In affirming that sentence, the Fourth Circuit concluded that Section 3651(a)(3) "[u]nquestionably" provided statutory authority to sentence the petty-offense defendant to "a term of six months of continuous imprisonment plus probation." *Id.* at 809. Permitting a combined sentence of continuous incarceration and probation for petty offenses is sensible because sentencing courts cannot impose supervised release on petty-offense defendants. See 18 U.S.C. § 3583(b)(3); *United States v. Jourdain*, 26 F.3d 127, 1994 WL 209914, at *1 (8th Cir. 1994) (unpublished) (plain error to impose a term of supervised release for a petty offense). It follows that a sentencing court may impose a combined sentence of incarceration and probation where, as here, the defendant is convicted of a petty offense.

Additionally, on Friday January 7, 2021, Judge Colleen Kollar-Kotelly sentenced a Capitol breach defendant convicted under 40 U.S.C. § 5104(e)(2)(G) to "the custody of the Bureau of Prisons for a term of 90 days" followed by a term of "36 months of probation." *See United States v. Virginia Marie Spencer*, ECF Docket No 1:21-cr-00147-CKK-2, trans. 46:25.

## II.     Introduction

The defendant, Jacob Wiedrich, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Wiedrich pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building.  As explained herein, the government's recommended sentence is appropriate in this case because: (1) Wiedrich screamed and cheered

while the forward line of the rioters broke through the police line; (2) he was one of the first in a crowd that pushed its way inside the Senate Wing doors which were being guarded by the police; (3) he posted videos he took of the Capitol breach to Facebook; (4) he traversed almost the entire length of the U.S. Capitol, exiting at the doors at the south end of the building; (5) his statements on Facebook after January 6 revealed a lack of remorse; (6) he actively spread false information on social media by downplaying the violence on January 6; (7) he lied to FBI agents about what he saw and heard during his participation in the riot; and (8) he stole a United States flag from the Capitol building which the FBI recovered from his home.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to disrupt the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan at sentencing). Here, Wiedrich's participation in a riot that actually succeeded in halting the Congressional certification combined with his aggressive behavior and actions renders a significant jail sentence both "sufficient, but not greater than necessary to comply with the purposes of" the federal sentencing regime in this case. *See* 18 U.S.C. § 3553(a).

### III.   Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. As this Court knows, a riot cannot occur without rioters, and each rioter's actions –

from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Jacob Wiedrich's Role in the January 6, 2021 Attack on the Capitol*

Jacob Wiedrich traveled to Washington D.C. on January 5, 2021 to participate in the political rally in support of President Trump, which was scheduled for the following day. Wiedrich told investigators he traveled alone, having purchased an airline ticket using "stimulus money" received from the government and having made no advanced reservations. Immediately following the rally on January 6, 2021, Wiedrich proceeded with a large crowd to the U.S. Capitol building. On that day, he wore a red "Make America Great Again" baseball hat, dark jacket with an orange undershirt and blue jeans.

Upon trespassing onto the Capitol grounds, Wiedrich began recording videos on his phone. As he made his way toward the Capitol building, Wiedrich recorded a video of himself screaming, *inter alia*, the following:

- "We're not giving up!"
- "This is America!"
- "We're not done!"
- "U.S.A.! U.S.A.! U.S.A.!"
- "Been tear gassed, been shot with rubber bullets, the whole fucking nine. Got in my eye right now. God damn it. This is America. This is our chance for freedom."
- "This is our house!"
- "Charge!"
- "Charge the mother fucker!"
- "Fuck these guys!"
- "We ride for Trump we die for Trump!"

Wiedrich later posted these videos as well as other videos from inside the Capitol building to his Snapchat account with vanity handle "kingbuddha27". A still photograph from the video that Weidrich recorded, provided to the Court as Government's Exhibit 01 is shown below as Figure A.



*Figure A*

Wiedrich first appeared in CCTV surveillance videos waiving a small American flag through the window immediately next to the Senate Wing door entrance at around 2:45pm. This doorway was defended by the police who had grabbed furniture and other items to create a physical barrier to fix an earlier breach at the same location. While at the window, Wiedrich recorded himself screaming, "We love the cops! What the fuck?! We're not socialists!"



*Figure B*: Wiedrich shown yelling at police through window.



*Figure C*: Wiedrich shown yelling at police through window

Wiedrich was one of the first in a crowd that successfully pushed its way inside the Senate Wing doors past the officer barricade. The government has not uncovered evidence that he personally made physical contact with any officer.



*Figure D*: Wiedrich enters the Capitol building.

Once inside the building, Wiedrich can be seen chanting, shouting, and displaying enthusiasm. In the video Weidrich took inside the building, he shouts, "This is America!"



*Figure E*: Wiedrich seen holding up his arms.

At one point, Wiedrich can be seen near the line of officers who were pressed against the back wall of the Senate Wing door area.



*Figure F*

Wiedrich is next picked up by CCTV cameras in the Crypt area, where he was holding a large American flag with decorative gold fringe. Wiedrich stole this flag from its position in the Capitol somewhere between the Senate Wing doors and the Crypt area.



*Figure G*



*Figure H*

Wiedrich then walked through the Hall of Columns, still holding the flag.



*Figure I*

Wiedrich finally left the Capitol building out the South Doors, having walked almost the entire length of the Capitol building and taken the stolen American flag with him. In total, Wiedrich spent approximately 20 minutes inside of the Capitol.



*Figure J*

The large American flag with decorative gold fringe Wiedrich stole from the Capitol was recovered from his room on July 29, 2021 during the execution of a search warrant.



*Figure K*: Chest found in Wiedrich's room.



*Figure L*: Stolen flag found in Wiedrich's chest.

*FBI Interview*

When FBI agents knocked on his door on January 16, 2021, Wiedrich voluntarily submitted to an interview.  During that interview, he stated that his intent in going to D.C. was to peacefully show his support for President Trump.  He stated he had no intention of engaging in violent activity or destroying property.

When ask whether he witnessed violence at the Capitol, he stated that although there were police present, there was no resistance to the crowd entering the building and Wiedrich stated he observed no property damage like window breaking or any violent confrontation with police. These were clear falsehoods—Wiedrich had in fact claimed in his video posted to Snapchat that he had been hit with tear gas and rubber bullets as he approached the Capitol Building; he screamed at police through a broken window; he had observed police erecting barricades with furniture which his fellow rioters violently pushed past; and he saw physical confrontations between the rioters and the police as the crowd pushed its way inside the building.

Wiedrich then stated that he entered the Capitol building only about ten feet past the entrance before deciding he should not go any further, so he turned around and left.  This was another flagrant falsehood.  Wiedrich trekked across the almost the entire length of the building, and to boot, stole an American flag along the way. Law enforcement officers recovered the flag from inside Wiedrich's home while executing a search warrant.

During the interview, Wiedrich expressed his love for America and stated that he was proud of his participation in the "rally."

*Social Media Posts*

Shortly after the attack on the Capitol, Wiedrich used Snapchat to publicly spread false propaganda minimizing the attack—stating, "we broke a few windows". He compared the attack

12

on the Capitol to Black Lives Matters protests, claiming that the latter were far worse than the former.  A still of that Snapchat video, with the text of his comments, is included below as Figure K and the video itself has been provided to the Court as Exhibit 02.



*Figure M*

For those who don't understand the difference between what we did yesterday and Black Lives Matter, let me break it down for you. Black Lives Matter burnt up the whole country, looted multiple stores, killed people, *killed people*, all because George Floyd—a drug addict who was a life-long felon got killed by a cop. I mean, I'm not saying it was justified but, it's a small reason to go kill people—innocent people, cops, kids, women. Compared to what we did yesterday was we marched the Capitol, we broke a few windows, but the thing is we made a statement that we're not putting up with this fraud in the election of 2020. And they killed a California Vet named Ashli Babbitt. She was in the Airforce. But you don't see us murdering cops. You don't see us burning churches and looting stores.

13

*The Charges and Plea Agreement*

On July 21, 2021, Wiedrich was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) as well as 40 U.S.C. §§ 5104(e)(2)(D) & (G). On July 29, 2021, he was arrested at his home in Utah. On September 15, 2021, Wiedrich was charged by a one-count Information with 40 U.S.C. § 5104(e)(2)(G). On October 14, 2021, he pleaded guilty to the Information. By plea agreement, Wiedrich agreed to pay $500 in restitution to the Architect of the U.S. Capitol.

## IV.   Statutory Penalties

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## V.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms. Indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, the Court must assess such conduct on a spectrum. In determining a fair and just sentence on this spectrum, this Court should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated

sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Wiedrich personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Wiedrich from most other misdemeanor defendants. Weidrich's lack of violence and property destruction is the reason he was charged only with, and permitted to plead to, a misdemeanor rather than felony.

On January 6th, Wiedrich trespassed onto the Capitol grounds and encouraged the crowd to "Charge the mother fucker!" He claimed to have been shot with rubber bullets and been tear gassed ("the whole fucking nine [yards]."). But he pushed forward, stating, "This is our chance for freedom." Wiedrich made it to a broken window and started shouting at officers, waving a small flag, and standing on the windowsill. Wiedrich then entered the Capitol building through the Senate Wing doors on the heels of a crowd that was directly confronting and physically pushing law enforcement officers and their impromptu furniture barriers. Wiedrich shouted, screamed, and in every way enthusiastically endorsed the violence that was around him. While the government has not uncovered evidence that Wiedrich destroyed any property, he later stole an American flag from the Capitol building and took it home to Utah. Wiedrich spent approximately 20 minutes inside the building and traveled across almost its entire length. Shortly after the riot, Wiedrich took to social media to minimize the violent conduct he witnessed. He also minimized his conduct and outright lied to the FBI regarding the extent of his activities during the riot.

As for remorse or contrition, Wiedrich told the FBI he was proud of his participation in what happened that day. Wiedrich's statements on social media during and after the attack

similarly demonstrate a lack of remorse.  In anticipation of sentencing, Wiedrich has written a statement to the U.S. Capitol Police apologizing for his criminal activity.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR ¶¶ 26, 29, and 30, Wiedrich's criminal history consists of juvenile and traffic offenses. Wiedrich has been compliant with his conditions of pre-trial release in this case.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[1] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

---

[1] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

**D.  The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. The violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be

deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Wiedrich's words on January 6th, his FBI interview, and his statements on social media clearly demonstrate the need for specific deterrence for this defendant. Wiedrich celebrated the violence at the Capitol on January 6 by posting videos where he cheered on his fellow rioters. After the attack, Wiedrich downplayed the violence on Snapchat, comparing it favorably to Black Lives Matters protests. In his FBI interview, he claimed he was proud that he participated in the "rally".

The government acknowledges that Wiedrich accepted responsibility early by entering into this plea agreement. On the other hand, his failure to acknowledge the dangers and violence of January 6, 2021, his spreading of false propaganda relating to the attack on the Capitol, and his lack of remorse underscore the need for specific deterrence in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with

Congress.[2] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[3] "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 (statement of Judge Lamberth at sentencing).

The sentencing courts have already made meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in more aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

---

[2] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[3] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he or she remained inside, the nature of any statements he or she made (on social media or otherwise), whether he or she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id*.; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United*

*States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the three-month prison sentence imposed on Robert Reeder (1:21-CR-00166-TFH) for reference. The United States recommended 6 months incarceration in that case. Although he engaged in no direct violence against police or property, defendant Reeder twice breached the Capitol, remaining inside for approximately a half hour; he recorded videos bragging about his unlawful conduct; he was tear gassed and shot with pepper balls; he chanted "Fight for Trump"; he filmed an officer being assaulted; and claimed that he "battle[d] the police."

The Court may also consider the 30-day prison sentence imposed on Gracyn Courtright (1:21-CR-00072-CRC). The United States also requested a sentence of 6 months incarceration in that case. Defendant Courtright reached the Senate floor; while inside the Capitol she picked up and carried around a "Members Only" sign which she only returned after being ordered to do so by law enforcement on her way out of the Capitol; she witnessed rioters damaging property and attempting to break into locked doors as soon as she entered the Capitol and continued to walk inside; she posted on her social media in posts that evidence a total lack of remorse and falsely

downplayed the violence of January 6 (including a post to Instagram with the caption "Infamy is just as good as fame. Either way I end up more known. XOXO"); and while inside she, along with a large mob, chanted at a line of law enforcement "whose house, our house" and "USA."

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, several of those factors support a sentence of incarceration.. Balancing these factors, the government recommends that this Court sentence Wiedrich to three-months incarceration, three years' probation, and $500 restitution. Such a sentence protects the community, promotes respect

for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

The United States has no objection to the public release of the above-referenced videos that will be electronically provided to the Court in this case.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By: _____
JACOB J. STRAIN
Utah Bar No. 12680
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530