UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                                            )<br>            v.                                          )<br>JACOB KYLE WIEDRICH            )<br>                                                            )<br>            Defendant.                         )<br>_____) | No.   21-cr-581 (TFH) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Jacob Wiedrich, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Wiedrich is a young twenty-four year old young man with no adult criminal history.  Less than a month after being charged in the instant matter, he accepted responsibility and has been nothing but cooperative ever since.  He even wrote a letter to the Capitol Police apologizing for his participation on January 6, 2021.  *See* Exhibit 1, Apology Letter.  Mr. Wiedrich did not engage in any violence, destruction of property, and left the Capitol building about 20 minutes after he entered.  Based on all of the factors discussed below, Mr. Wiedrich respectfully requests that the Court impose a sentence of twenty-four months' probation with the conditions that he serve the first two months on home detention and complete 100 hours of community service.

### BACKGROUND

On October 14, 2021, Mr. Wiedrich entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC

1

§5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Wiedrich, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. While inside, Mr. Wiedrich was not violent, did not destroy property, and did not enter any sensitive areas.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

2

providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

## II. Imposing a Sentence of 24 Months' Probation With Two Months' Home Detention is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

### a. Mr. Wiedrich's Personal History and Characteristics

Jacob was born and raised in Utah, where he still currently resides. He lived mostly with his mother growing up as his parents divorced when he was five years old. After his father moved out of the house, they did not have a close relationship during his childhood and adolescence. It was not until recently that they rekindled their relationship and are now close. Jacob is one of among many siblings and grew up in large family. In high school, Jacob excelled in athletics, especially in football. He struggled with his academics, however after entering an Individualized Education Plan, he overcame his learning issues and earned his high school diploma in 2016.

Jacob had sporadic jobs after high school until he found work in Roofing and Construction in 2020. After working for his father's company for a few months, Jacob found steady employment with Sunus Alpenglow Solar and Electric, where he currently works full-time. Jacob wishes to attend trade school to become an electrician. Based on his ability to maintain steady employment, he recently obtained an apartment of his own where he lives with his girlfriend. Jacob has been focused on his personal growth, especially after sincerely regretting his actions on January 6, 2021. In her letter to the Court, his mother describes her son as

determined, generous, and big-hearted. *See* Exhibit 2, Letter from Emily Wiedrich. She has faith in her son's future and explains:

> He is extremely bright and has a lot of potentials to do great things for his community and future if given the opportunity. Please, try to look past this instant when he was caught in the moment. He isn't a bad person, he has made many mistakes, but does try very hard to learn and grow from them.

*Id.* Jacob traveled to Washington, D.C. and participated in the rally on January 6, 2021 because he was a Trump supporter who sincerely believed in what his former President told him.

### b. Nature and Circumstances of the Offense

At the time, Jacob believed he was part of something important by participating in the rally on January 6, 2021. When Republican leader after leader, including the former President, encouraged the crowd to go down to the Capitol building, Jacob did what the rest of the crowd (mostly men and women older than him) did, and marched to the Capitol building. When he arrived, he observed the crowd that was already ahead of him and had already stormed the Capitol building. This gave him continued confidence that he was not alone in following what he believed the President had encouraged them to do. Jacob was a young man observing thousands of older individuals storm the Capitol building and those individuals had an unfortunate influence on him. He regrets all of his actions and words that day and the days following. After Jacob reflected on that day, he made a decision to focus on his personal growth and not on politics. He obtained steady employment, his own apartment, and is now gearing up to attend trade school.

Despite the government's allegation that Mr. Wiedrich was not completely truthful to law enforcement during an unrecorded voluntarily interview just a couple weeks after January 6, 2021, his family views him as an honest individual who recognizes when he has made a mistake. *See* Exhibit 3, Letter from Chance Wiedrich. Jacob's older brother explains to the Court that:

> In more recent years I have seen him take yet another step in the right direction toward becoming the best version of himself as possible. Having humility in his actions and realizing when he has done wrong.

*Id.* Jacob did not hesitate to accept responsibility in this case and did so within one month of being charged. He is aware of his actions and ever since he accepted responsibility, he has not tried to excuse his actions. To the contrary, he wrote a thoughtful apology letter to the Capitol police, where he stated:

> I wanted to take full responsibility of all my actions and not shy away from the damage that was done to this country on that day. From physical damage to the amount of mental strain it had on people and more importantly our police officers and to have my name attached to such an event is disappointing.….To all the police officers working on January 6th and their families I apologize for being a part of a terrible day it was for them.

*See* Exhibit 1, Apology Letter.[2]

---

[2] The government, in its sentencing memorandum, inaccurately asserts that Mr. Wiedrich has revealed a lack of remorse. *See* Gov't Sent. Memo at 16-17. Their assertion is based on comments Mr. Wiedrich made shortly after January 6, 2021, but completely fails to acknowledge the fact that (1) he ceased posting comments in the last year, (2) he literally entered a guilty plea – acknowledging guilt in writing and before the Court, (3) and has since written a sincere apology letter to the Capitol police for his actions. The fact that Mr. Wiedrich made statements on social media shortly after January 6, 2021, does not mean that that it is not possible for remorse to be shown at a later time, especially after considering the amount of social media influence there was from his peers in the days following January 6, 2021 and his young immature age.

Unfortunately, Jacob's young age made him more susceptible to believing the words of so many older individuals who were confident that they needed to collectively take a "stand" that day.  His actions, however, were not pre-calculated, and it is clear he was following the crowd and became too passionate towards this unfortunate cause.  Jacob did not assault anyone, did not destroy any property, and did not enter into any sensitive areas in the Capitol building.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Jacob's personal history and characteristics, it is clear that his conduct on January 6, 2021, was an isolated event that was completely out his character.  It is also extremely unlikely that he will recidivate given his lack of criminal history and his perfect record on pre-trial supervision for the past several months.  Any potential for recidivism can be addressed by imposing 100 hours of community service, a more effective method of deterrence than a period of incarceration, especially for a young man such as Mr. Wiedrich.

United States Probation has recommended a sentence of 30 days of incarceration.  The government recommends a severe sentence of 3 months' incarceration followed by a period of probation.  However, sentences in the 30-45 day range have only been imposed in other capitol misdemeanor cases with far more aggravating conduct.[3]  Furthermore, the government's recommendation has no

---

[3] United States Probation bases its recommendation in part on their belief that Mr. Wiedrich himself pushed through a police barricade into the building.  *See* ECF No. 27.

support when analyzing past sentences and its imposition would result in a drastic disparity in sentencing.

For example, in *United States v. Jancart*, 21-CR-148 (JEB), the court imposed a 45 day sentence of incarceration after the defendant pled guilty to Disorderly Conduct because the defendant, who was an Air Force Veteran, (1) brought a gasmask and two-way radios, (2) laughed and cheered when rioters broke through a police line, (3) entered the Speaker's conference room, (4) and posted statements after January 6 discussing a potential revolution coming. The government also believed that Jancart deleted videos and messages on his phone after January 6, 2021. Unlike Jancart, Jacob did not enter sensitive areas of the Capitol building. Although he did make some post January 6 statements on social media, those statements did not discuss a potential revolution and he stopped posting such statements very shortly after January 6, 2021. Lastly, Jacob did not delete anything off his phone and cooperated with law enforcement.

Similarly, in *United States v. Bradley Rukstales*, 1:21-CR-041 (CJN), the court imposed 30 days of incarceration after the government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately brought to the floor by an officer having to be dragged out of the Capitol building after resisting their efforts. Jacob is not proud of how he acted on January 6, 2021, however he did not act violently towards officers and he left the building

---

However, the video evidence does not support this. While Mr. Wiedrich is close behind a group that does push past the police barricade, he did not himself assault an officer and walked in the building after the group in front of him breached the barricade.

voluntarily. Mr. Rukstales was also an older man who had more life experience. Jacob's actions were immature and he has since learned from his mistakes and made positive changes in the last year.[4]

Although there is no case identical to Jacob's case, *United States v. Jessica Bustle,* 1-21-CR-238 (TFH), is more akin to the instant offense where the Court imposed 24 months' probation with 2 months' home detention. The defendant in that case was extremely vocal on social media about being proud of her participation on January 6, 2021. She also observed broken windows, individuals being tear gassed, and later wrote on social media that a revolution was needed. Like Jacob, she also accepted responsibility early. Unlike Ms. Bustle, Jacob was not as vocal on social media but did say some things that he now regrets. After the court balanced the 3553(a) factors in Ms. Bustle's case, it ultimately decided that a term of incarceration would not be productive. *See* Dkt No. 41, Transcript of proceedings. Similarly, here, a sentence of incarceration would be counterproductive as Jacob has finally made real steps to maintain independence by

---

[4] Jacob's case can also easily be distinguished from other defendants who received periods of incarceration. *See U.S. v. Matthew Mazzocco*, 21-CR-054 (TSC) (sentenced to 45 days incarceration – government believed he made entered the Spouse's lounge of the Capitol building, commented on Facebook afterwards that he concurred with the disruption of the vote, and sent text messages to family and friends showing lack of remorse for his actions and that Antifa was to blame); *U.S. v. Dana Winn*, 21-CR-139 (TNM) (entered guilty plea to §1752 sentenced to 10 days incarceration to be served on the weekends after messages found expressing intent to stop the vote on January 6, 2021); *United States v. John Lolos*, 21-CR-243 (APM) (sentenced to 14 days' incarceration – defendant had history of violence and celebrated that he participated in delaying the vote on January 6, 2021 and was removed from an airplane after the riot due to unruly conduct).

obtaining employment and an apartment of his own. If he is forced to serve jail time, all of those accomplishments will be compromised.

The instant matter is also similar to *United States v. Jordan Stotts*, 21-CR-272 (TJK), where the court sentenced the defendant to 24 months' probation with 2 months' home detention. Although Stotts shouted at police, scaled the wall to gain access to the Capitol, and made a few post January 6, 2021 statements on social media, he also accepted responsibility early and cooperated with law enforcement. Similar to Stotts, Jacob accepted responsibility very early in his case, cooperated with law enforcement, and after reflection of his actions ceased his posts on social media and rather focused on his personal growth.

The government, in its sentencing memorandum, asserts that their proposed sentence is justified because of *United States v. Reeder*, 1:21-CR-166 (TFH), a case where the Court imposed a sentence of 3 months' incarceration. *See* Gov't Sent. Memo at 22. However, that case is a great example of why the government's recommendation would create a sentencing disparity if imposed in this matter. In *Reeder*, the defendant entered a guilty plea to 40 U.S.C. §5104(e)(2)(G) and shortly before sentencing, the government discovered new evidence that Reeder assaulted an officer. *See Reeder*, ECF Nos. 33, 35. The newly discovered evidence was a video capturing him place his hands on an officer and engage in a scuffle with him. *Id*. at 35. Not only was there newly discovered evidence that potentially could have supported the filing of more severe charge, the defendant in *Reeder* trespassed in the Capitol building twice, was 55 years old, and filmed another officer being

9

assaulted rather than trying to help him.  So, this case is not comparable to the instant offense because Mr. Wiedrich did not engage in violence, did not film an officer being assaulted, and was in the Capitol building for approximately 20 minutes.

Lastly, the government points to a case where the court imposed 30 days' incarceration, which shows that it is not being consistent with its reasoning for requesting such a severe sentence in this case.  *See* Gov't Sent. Memo at 22 (citing *Gracyn Courtright*, 1-21-CR-072 (CRC)).  In that case, the defendant actually entered the Senate floor and entered a guilty plea to 18 U.S.C. §1752(a)(1), which is an important distinction because that charge is not a petty offense and carries a higher statutory maximum.

### III. The Government Is Incorrect that 40 U.S.C. §5104(e)(2)(G) May Include Both Incarceration and Probation

In its sentencing memorandum submitted to the court, without any prior notice to the defendant in his plea agreement, the government now claims that Mr. Wiedrich can be sentenced to a period of incarceration followed by a period of probation.  *See* Gov't Sent. Memo at 1-2.  Contrary to the government's assertion, the court is not authorized to impose both a sentence of incarceration and a sentence of probation in this case, and doing so would raise significant constitutional concerns.  18 U.S.C. § 3551; *see United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125 (Chief Judge Howell chose to not impose such a

sentence after briefing provided to the Court).[5] The plea agreement nowhere indicates or notifies Mr. Wiedrich that he may be subject to both 6 months of incarceration and 5 years of probation. A correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *Torrens*, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration.

The case the government cites, *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009) (unpublished), misreads 18 U.S.C. § 3563(a)(3) and ignores 18 U.S.C. § 3551(b).[6] The sole court in this district to impose both incarceration and supervision for a petty misdemeanor, in *United States v. Virginia Spencer*, No. 21-cr-00147-2 (CKK), has not yet entered the written judgment and ordered supplemental briefing on the issue (*see* Min. Order 01/11/2022).

---

[5] If the Court is considering such a sentence, defense counsel would like the opportunity to further brief this matter.

[6] It appears that the decision has not been cited by any court, according to a Lexis citing history search. Its analysis, issued on the papers without the benefit of oral argument, id. at 809, is inaccurate and not remotely persuasive for the reasons set forth in the pleadings in *Torrens*.

11

## CONCLUSION

For the reasons stated above, Mr. Wiedrich respectfully requests that the Court impose 24 months' probation with the condition that he serve the first two months on home detention and complete 100 hours of community service. Mr. Wiedrich also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org